[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this family action, the parties seek an equitable division of their assets and other relief as set forth in their written claims for relief. The court dissolves the marriage as of the date of this memorandum and enters orders with respect to the distribution of the parties' property.
 I
"General Statutes § 46b-81, 46b-82 and 46b-84 set forth the criteria that a trial court must consider when resolving property and alimony disputes in a dissolution of marriage action. The court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. A ritualistic rendition of each and every statutory element would serve no useful purpose. . . . Further, the trial court is vested with wide discretion and broad powers in resolving such matters. . . . Therefore, the trial court is free to weigh the relevant statutory criteria without having to detail what importance it has assigned to the various statutory factors. Collucci v. Collucci, 33 Conn. App. 536, 539, 636 A.2d 1364
(1994); see also Rummel v. Rummel, 33 Conn. App. 214, 222, 635 A.2d 295
(1993); Savage v. Savage, 25 Conn. App. 693, 701, 596 A.2d 23 (1991)." CT Page 3242 (Citations omitted; internal quotation marks omitted.) Caffe v. Caffe,240 Conn. 79, 82-3, 689 A.2d 468 (1997)). This court has considered all the criteria.
The plaintiff is fifty-one years old. At the beginning of the marriage, she worked as a registered nurse at Bridgeport Hospital. After the first of the parties's two children was born, the plaintiff worked as a private duty nurse. In 1985, she borrowed $13,500.00 to finance the purchase of an agency that provided private duty nursing services. She operated this business for three and one-half years earning as much as $60,000.00 a year. When she sold the business, she used the sale proceeds, $75,000.00, to pay the business loan, purchase a car, a computer, and to defray the cost of the children's education. The plaintiff next worked for the Trumbull Board of Health. In May of 1999, she obtained a BSN degree from Regents College in New York. Presently, she is employed as a case manager at St. Vincent's Medical Center where she earns $56,000.00 a year. She has not yet obtained vested rights in her employer's pension plan. During the marriage, the plaintiff was hospitalized for psychiatric treatment. She has received psychiatric counseling since 1992 and presently takes medication for depression.
The defendant is fifty-three years old. He attended college for two years. From 1979 to 1983, he worked as a State Trooper. In 1983, he was injured in an automobile accident and ceased to be on active duty. In 1988, he retired from the State Police with a disability pension of $30,000.00 a year. During the marriage, he managed two business. In 1979, he, along with two friends, formed a business, AJR, Inc., that repaired trucks and heavy equipment. When the defendant and his partners sold this business, the defendant received $80,000.00. He used this money for the children's college expenses and to purchase and furnish a house in Florida. In the early 1980's, the defendant and a partner purchased residential rental property that they sold after two years. The defendant received $20,000.00 to $25,000.00 from this endeavor and used the money to pay for college expenses and the house in Florida. Presently, he works as a real estate agent and earns approximately $15,000.00 a year.
Since the parties' marriage on September 8, 1973, they have worked hard to provide for themselves and their two children, who are now adults. The plaintiff and defendant have acquired a house in Trumbull, Connecticut, which is worth $350,000; a house in Palmetto, Florida, which is worth $225,000.00; and unimproved real estate in Vermont, which is worth $15,000.00. During the past five years, the defendant made improvements to the marital home in Trumbull that were financed with his funds, the parties' tax refund, which was mostly based on the wife's wages, and gifts from the defendant's parents. Their other assets consist of the wife's deferred compensation accounts, which are worth $27,826.00, checking and CT Page 3243 savings accounts, and household furnishings. They have credit card debts of approximately $53,000 and a mortgage debt of approximately $23,000.00.
Once before, in 1989, the plaintiff instituted a divorce action. After the parties reconciled in 1991, they maintained a joint bank account for household expenses into which they each deposited the same amount each month, They each contributed to vacation expenses, their daughter's wedding, and occasional school expenses that were not covered by the savings accounts that they maintained for their children's educational expenses. In 1992, the defendant paid off the plaintiff's credit card accounts while she was hospitalized for mental illness. At the present time, the plaintiff's liabilities are $52,400.00. Some of the debts that she has set forth on her financial affidavit are joint debts.
While each blames the other for the marital breakdown, neither bears any greater fault for the marital breakdown than the other. The euphemism "they have grown apart" applies to their situation.
The court has considered the above circumstances in entering the financial orders set forth in Part II of this memorandum.
 II
The allegations of the complaint are proven. Accordingly, this court finds that the plaintiff, whose maiden name was Dariel Muldoon, and the defendant married in Bridgeport, Connecticut, on September 8, 1973; that this court has jurisdiction to dissolve the marriage under General Statutes § 46b-44 (c)(1); and that the marriage has broken down irretrievably.
The following orders are entered:
 1. The marriage is dissolved on the ground of irretrievable breakdown.
 2. The defendant is awarded the entire interest in the real property at 4711 Arlington Road, Palmetto, Florida. This award shall become effective upon the sale of the other two real properties that are owned by the parties at which time the plaintiff shall quitclaim her interest in the Florida property to the defendant. The defendant shall immediately be responsible for all expenses that are incurred in connection with the ownership and maintenance of the property and shall indemnify and CT Page 3244 hold the plaintiff harmless from any liability in connection with the property.
 3. The parties shall sell the marital home at 53 Great Neck Road, Trumbull, Connecticut, and the real estate in Sheffield, Vermont. The properties are to be placed on the market no later than one month from the date this judgment is issued. Each property is to be sold in a reasonable manner. The parties shall select for the sale of each property a real estate broker who is not affiliated with the defendant's real estate business. The defendant may live in the marital home until it is sold and shall be solely responsible for the monthly installment payments on the mortgage, the real estate taxes that can be allocated to the period he occupies the home, homeowners' insurance, and expenses related to the maintenance of the property. After liens that presently exist on the properties are paid and the expenses of the sales are paid, the plaintiff shall be paid $225,000.00 from the proceeds. The parties shall share equally in any proceeds that remain after such payment to the plaintiff.
 4. The parties shall equally divide the joint bank accounts that are located in Connecticut, Florida, and Vermont. Each shall retain sole ownership of those accounts that are presently in his or her sole name.
 5. Each party shall be responsible for obtaining his or her own health insurance benefits. Should the plaintiff desire to obtain COBRA benefits, the defendant shall cooperate with the plaintiff so that she may obtain such benefits.
 6. The parties should attempt to divide the household furnishings located at 53 Great Neck Road, Trumbull, and 4711 Arlington Road, Palmetto, Florida, by conferring with each other. Should they not be able to divide such property, they should request assistance from the Family Services Office of the Superior Court before returning to court for further orders.
 7. The plaintiff shall be solely responsible for those CT Page 3245 debts that are set forth on her financial affidavit, i.e. the debts owed to MBNA, First USA VISA, MBNA Mastercard, JC Penney, and Jean Muldoon. The defendant shall be solely responsible for those debts that are set forth on his financial affidavit.
 8. Each party shall retain sole ownership of their respective retirement accounts and pension plans.
9. Each party shall retain ownership of the automobiles presently in his or her possession.
 10. The defendant shall indemnify and save the plaintiff harmless from any liability for taxes, assessments, penalties or interest which may result from any federal or state income tax return signed, or to be signed, by the defendant and plaintiff as pertains to the defendant's income, and the defendant shall pay for the defense against any such claim.
 11. The plaintiff shall indemnify and save the defendant harmless from any liability for taxes, assessments, penalties or interest which may result from any federal or state income tax return signed, or to be signed, by the plaintiff and defendant as pertains to the plaintiff's income, and the plaintiff shall pay for the defense against any such claim.
 12. If any deficiency assessment should be finally determined in respect to any joint income tax return previously filed or hereafter filed by the parties, each shall bear his or her share of any additional tax (including interest and penalties, if any) attributable to his or her income or to the deductions or credits claimed by him or her.
13. Each party shall be responsible for his or her own counsel fees.
14. No alimony is awarded to either party.
 15. The plaintiff's birth name is restored to her and she shall henceforth be known as Dariel Muldoon.
THIM, JUDGE CT Page 3246